The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR18-217 JCC |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| JEROME ISHAM, | |
| Defendant. | |

The Government recommends the Court sentence Mr. Isham to 180 months (fifteen years) imprisonment, five years of supervised release, and the $100 penalty assessment per count (totaling $600). The government believes this sentence accurately reflects the factors set forth in the U.S. Sentencing Guidelines and in 18 U.S.C. § 3553, including the need for the sentence to protect the public, provide just punishment, and afford adequate deterrence. The government's recommendation, which is half the low end of Mr. Isham's guidelines range, is also intended to balance Mr. Isham's life history with the nature of the offense – that is, the tens of thousands of fentanyl and furanyl fentanyl pills Mr. Isham intentionally distributed, and conspired to distribute for many years, thus affecting the lives of hundreds, if not thousands, of addicts and families throughout this district.

United States' Sentencing Memorandum
*United States v. Isham*, CR18-217 JCC – 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I. DISCUSSION

### A. Guidelines Calculations.

Mr. Isham has four adult felony convictions, only two of which score for purposes of his U.S. Sentencing Guidelines. His history yields four criminal history points, and thus a Criminal History Category of III. Pursuant to the U.S. Sentencing Guidelines, the government calculates the defendant's Offense Level and Guidelines range as follows:

**Count One (Conspiracy to Distribute Controlled Substances):**

| | |
|---|---:|
| Base Offense Level (USSG § 2D1.1) | **36** |
| Dangerous weapon possessed (USSG § 2D1.1(b)(1)) | **+2** |
| Role in the Offense (USSG § 3B1.1(c)) | **+2** |
| **Total Offense Level:** | **40** |
| **Guidelines Range:** | **360-Life** |

#### 1. Base Offense Level

The Probation Department properly calculated the base offense level. In determining that starting point, this Court is not bound by the jury's finding as to drug weight for purposes of the statutory mandatory minimum. Rather, the Court may consider *all* relevant conduct of the defendant's and his co-conspirators, pursuant to USSG § 1B1.3(a)(2). *See* USSG § 2D1.1, Application Note 5.  For purposes of determining relevant conduct in a conspiracy case such as this, the Sentencing Guidelines state that the sentencing court should consider the following:

(1)(B)   in the case of jointly undertaken criminal activity . . . all acts and omissions of others that were --

    (i)    within the scope of the jointly undertaken criminal activity
    (ii)    in furtherance of that criminal activity, and
    (iii)    reasonably foreseeable in connection with that criminal activity;

United States' Sentencing Memorandum
*United States v. Isham*, CR18-217 JCC – 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

USSG § 1B.1.3(a)

Where the amount of drugs seized from the defendant's home (or seized in total in this conspiracy) "does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." Application Note 5, USSG § 2D1.1.

    To approximate the scale of this conspiracy, it may be useful to start with the drugs found on August 3, 2018, the day of Mr. Isham's arrest. On that date, DEA and Task Force agents conducted a controlled delivery of a package from China labeled "lab supplies" to the residence of Sadie Bates. The package had contained 100 grams of furanyl fentanyl, which had been switched out for "sham" when delivered to Ms. Bates. When Mr. Isham arrived to retrieve the package, he was arrested. Investigators obtained a search warrant for his home and vehicle, where they found more than 1,000 furanyl fentanyl pills in his bedroom and vehicle, and more than 3,000 norfentanyl pills in his kitchen.

    As the investigation continued after August 3, agents recovered the thousands of text messages introduced during trial. In one such message, Isham claimed, "I sell hundreds to thousands daily," referencing his illicit pill sales (Attached, Exhibit One). Mr. Isham's texts go on for hundreds of pages, and made it abundantly clear that as of 2017-2018, Mr. Isham's life revolved around buying and selling illegal fentanyl and furanyl fentanyl, and that he well knew the scope of this conspiracy.

    An approximation of Mr. Isham's personal drugs sales can also be inferred from his other text messages, which showed that between July 2017 and June 2018, Isham ordered 954 "packs" (of one hundred pills each) from Mr. Pelayo (Exhibit One). The government's summary chart (shown in closing) totaled Mr. Isham's pill purchases at

United States' Sentencing Memorandum
*United States v. Isham*, CR18-217 JCC – 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

95,400 pills. (Exhibit One), thus corroborating Mr. Isham's bold claim of prolific drug sales.

Relevant conduct in furtherance of the conspiracy also consists of Mr. Woolard's large orders for fentanyl/furanyl fentanyl. On June 27, 2018, Woolard ordered twenty-one packages of fentanyl, of 100 grams per package, and asked the Chinese supplier to deliver three, 100-gram packages to seven different recipients. Two of these recipients were conspirators recruited by Mr. Isham: Sadie Bates and Jessie Simmons, each of whom was to receive three packages (Exhibit One). Mr. Woolard also directed the Chinese supplier to send three packages addressed to "Raymond Jones," *i.e.*, codefendant Anthony Pelayo, at Mr. Isham's marijuana grow house. *Id*. Thus, in addition to his pill distribution, Isham was directly involved in recruiting others to receive multiple parcels of drugs imported from China, and in receiving parcels shipped to his marijuana grow.[1]

These are not the only drugs this Court is to consider, however. When factoring in drug quantities "within the scope" of the conspiracy, "in furtherance of" the conspiracy, and "reasonably foreseeable in connection with" the conspiracy, as required by USSG § 1B1.3, and as proven at trial, the drug quantity attributable to Mr. Isham easily surpasses the "3 kilograms of a fentanyl analogue" required for a base offense level of 36. (Exhibit One, "Estimation of Quantity and Wholesale Value of Pills").

## 2. Possession of a Dangerous Weapon

The Probation Department has correctly applied an enhancement for possession of a dangerous weapon. The defendant's objections to this enhancement, as reflected in the Pre-Sentence Report, are without merit.

---

[1] In an email sent on or about July 21, 2018, the Chinese source of supply wrote Woolard that, among other parcels, the first parcels to Ms. Bates and Mr. Simmons had been delivered, and a parcel addressed to "Raymond Jones" had cleared customs. *See* Trial Ex. 820 at p. 2. In that same discussion, the Chinese source of supply explained that they had sent out 13 parcels of furanyl fentanyl instead of fentanyl, and would re-process and ship Mr. Woolard's order as soon as possible.

United States' Sentencing Memorandum
*United States v. Isham*, CR18-217 JCC – 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

An enhancement for possession of a weapon should be applied ". . . if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Application Note, USSG § 2D1.1(b)(1). In this case, agents found Isham's gun (he does not dispute it was his), under his bed, within arm's reach of hundreds of pills, in the same room as more than a thousand pills, and in his home where agents found several thousand pills. (Exhibit Two, Photos of Isham gun *in situ*, excerpted from Government's Closing Powerpoint). This is more than sufficient.

The Ninth Circuit has upheld the application of a USSG § 2D1.1(b)(1) firearm enhancement in circumstances very similar to Mr. Isham's. *See* e.g., *United States v. Gomez*, 6 F. 4th 992, 1010 (9th Cir. 2021) (Firearm enhancement applied when gun found in same bedroom as drugs); *United States v. Parlor*, 2 F. 4th 807 (9th Cir. 2021) (Enhancement appropriate for five guns – two guns sold to a confidential information, one gun found in a bed under a mattress in defendant's bedroom (the drugs were found in a backpack at the foot of this bed), and two guns found in defendant's storage locker *eleven weeks* after defendant's arrest); *United States v. Heldberg*, 907 F. 2d 91 (9th Cir. 1990)(Customs agents found an unloaded .25 caliber handgun inside a briefcase, in the trunk of the defendant's car, with two ammunition clips, and found drugs in defendant's pocket during border patdown).

Given the longstanding Ninth Circuit caselaw on this issue, and the clear language of USSG § 2D1.1(b)(1), this enhancement readily applies to Mr. Isham.

### 3. Misrepresenting or marketing a substance

The Probation Department has included a four-level enhancement for knowingly mispresenting or marketing a substance containing fentanyl, pursuant to USSG § 2D1.1(b)(13). Although the government agrees this upward enhancement should apply to Woolard and Pelayo, the government has been cautious to apply this adjustment to Isham. On the one hand, evidence at trial showed that Isham possessed (in his residence) several thousand norfentanyl tablets, and thousands of fentanyl tablets, all of which, by

United States' Sentencing Memorandum
*United States v. Isham*, CR18-217 JCC – 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

their appearance, looked like real oxycodone pills. On the other hand, the government is not aware of texts or testimonial evidence that shows Isham knowingly marketed these products as real oxycodone pills.

In the end, the government believes this adjustment may be appropriate, but is unnecessary to apply, given Isham's 360-life guidelines range, and the Probation and government's sentencing recommendations that fall well below that range.

### B. The Defendant's History and Characteristics.

Mr. Isham's history and characteristics warrant a significant sentence. He is not a young man who made a single error in judgment, coming before the Court for his first felony conviction. Rather, he is 40 years old, and has stood in front of many sentencing judges for drug and gun offenses, going back twenty years. These judges repeatedly directed him to not possess firearms, strictures he ignored.

**Snohomish County Case No. 99-1-01470-1 (Cocaine dealing)**

Mr. Isham's felony history begins more than twenty years ago, when he was 18. On May 21, 1999, Snohomish County detectives executed a search warrant on Mr. Isham's truck following a drug investigation. Officers found two plastic bags containing eleven grams of cocaine in the ashtray of his truck, as well as $500 cash. Isham admitted selling cocaine, explaining, ". . . he had been going through approximately one ounce of cocaine a week and participated in sales; he indicated that he was selling twenty, forty, or sixty rocks in denominations."[2]

On November 9, 1999, Isham pleaded guilty to Possession with Intent to Distribute Cocaine. He received a sentence of 24 months in custody, and was placed on

---

[2] The documents upon which this section relies, which include probable cause statements and conviction documents, were previously provided to the Court as attachments to Dkt. # 362, and are not included herein in the interest of brevity and efficiency. None of these facts appear to be disputed, as they were also contained in the Pre-Sentence Report and were not the subject of objections.

United States' Sentencing Memorandum
*United States v. Isham*, CR18-217 JCC – 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

one year of post-sentence community placement. The sentencing judge directed him to not possess firearms or controlled substances.

**Snohomish County Case No. 01-1-01120-1 (Marijuana Dealing)**

On May 12, 2003, now age 22, when Mr. Isham was arrested during a traffic stop for driving on a suspended license. The arresting officers found a backpack containing 66 grams of marijuana, as well as a digital scale. During the arrest process, the officer noted that Isham's pager was constantly ringing, going off "nearly twenty times," and appearing "to display drug-related codes." Of much greater concern than the marijuana, police also found a stolen firearm in the defendant's vehicle – a Colt Pistol.

On June 19, 2003, Isham pleaded guilty to felony possession of marijuana and possession of the stolen firearm. On August 5, 2003, he was sentenced to fifteen months in prison, and nine to twelve months of community custody. He was again directed to not possess firearms (the phrase "Ineligible to Possess Firearms" is stamped atop the Judgment, which Isham signed in open court).

**Snohomish County Case No. 09-1-01943-1 (Marijuana and OxyContin)**

To Mr. Isham's credit, it was six years before he acquired his next felony conviction. On September 27, 2009, Mr. Isham was driving his car in Snohomish County when he was involved in a road-rage incident (he was the alleged aggressor). The victim reported that Isham had pointed a gun at him. Police conducted a high-risk stop. During a search, police found two bags of pills on Isham, one of which contained five OxyContin pills, as well as several hundred dollars. During a search of Isham's car, police found $300 in cash, a "blunt," or cigar of suspected marijuana, and brass knuckles between the front seats. In a backpack in the rear driver's side seat, police found approximately 166 grams of suspected marijuana, two scales with suspected marijuana residue, a box of sandwich bags, and three cell phones.

On March 10, 2010, Isham pleaded guilty to possessing the OxyContin tablets found in his car. On May 5, 2010, he was sentenced to six months and one day in prison.

United States' Sentencing Memorandum
*United States v. Isham*, CR18-217 JCC – 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

...
...
...

He was directed to not possess or carry firearms. (Again the phrase, "Ineligible to Carry Firearms" is stamped on the first page of the Judgment, which Isham signed in open court.

**Snohomish County Case No. 12-1-00881-1 (Oxycodone Dealing)**

A little over one year after Mr. Isham was sentenced in the above case, he was prolifically buying and selling oxycodone. During the summer of 2011, a confidential source (CS) informed Snohomish County police that the CS had been selling oxycodone to Mr. Isham at the rate of 1,000 pills at a time. The CS explained that Isham was typically purchasing $20,000 worth of oxycodone at a time. Police set up a reverse controlled buy. On July 11, 2011, police arrested the defendant on his way to the controlled buy. While searching him, the police found more than $3,500 in cash and 230 Xanax pills. The defendant admitted he was on his way to purchase hundreds of Oxycodone pills. Mr. Isham consented to a search of his car. In it, officers found a scale, 27 grams of marijuana, five cell phones, and a loaded .22 Smith and Wesson with an obliterated serial number.

On December 7, 2012, the defendant (now age 31), pleaded guilty to attempted possession with intent to distribute oxycodone, and being a felon in possession of a firearm. On March 26, 2013, he was sentenced to seventeen months in prison. The judge directed him to commit no crimes and to not possess controlled substances. He was, as usual, directed to not possess firearms, a restriction he –again – acknowledged he understood by signing in open court.

As of 2017, Mr. Isham was back to selling drugs as part of this charged conspiracy.

**C.     The Nature and Circumstances of the Offense.**

This Court is well-aware of Mr. Isham's role in the offense, which the government has already summarized, and which this Court heard about at trial. In short, Mr. Isham was a recruiter, a pill distributor, and a do-it-all, trusted lieutenant to Anthony Pelayo.

United States' Sentencing Memorandum
*United States v. Isham*, CR18-217 JCC – 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### D. The Need for Deterrence.

Mr. Isham's prior felony convictions, summarized above, did not deter him from participating in this conspiracy, or from dealing the most toxic illicit drug on the market today. They also did not deter him from possessing a firearm. Thus, a strict sentence is warranted, and the government believes its recommended sentence may finally deter Mr. Isham from further criminal conduct, and may deter other potential drug distributors from engaging in similar conduct.

### E. Just Punishment

The government's recommendation is strict but just. It accounts for the defendant's role in the offense, his criminal history, and the nature of his crimes. It is far below his guidelines range.

In his letter to the Court, the defendant self-servingly places himself as the 9th person in the conspiracy (out of eleven). This is hard to swallow. Although Isham pales in comparison to Woolard and Pelayo, he was easily the third or fourth highest ranking member of this conspiracy (perhaps tied with Timothy Mantie). As noted above, Isham was Anthony Pelayo's most trusted lieutenant. He was also the most prolific seller of pills behind Woolard and Pelayo (again likely tied with Mr. Mantie). The government's sentence recommendation does not in any way create an unwarranted disparity.[3]

In considering a just punishment, the government wishes to acknowledge Mr. Isham's lengthy and thoughtful letter to the Court, which highlights his tragic life story and difficult upbringing. The government has accounted for this history in its

---

[3] In a bid for leniency, Mr. Isham also makes assertions regarding failed plea negotiations. His re-telling is neither complete nor relevant. Rather than focusing on such irrelevance, the government reiterates the need for the sentencing court to consider the factors set forth in 18 U.S.C. § 3553. Having presided over the two-week trial in this matter, the Court is well aware of the magnitude of this conspiracy, and well-positioned to impose a just sentence based upon those factors.

United States' Sentencing Memorandum
*United States v. Isham*, CR18-217 JCC – 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

recommendation, which is *half the low end* of the defendant's guidelines' range (360-life).[4]

## II. CONCLUSION

Bradley Woolard and Anthony Pelayo relied on Jerome Isham because they knew they could trust him. Mr. Isham had a network of associates in the drug trade, a twenty-year, proven track record of drug dealing, and a willingness to keep his mouth shut. Conspiracies like this one, which lasted for years, netted millions of dollars for its leaders, and resulted in hundreds of thousands of pills flooding the streets of Western Washington, do not succeed without men like Jerome Isham. The government's recommendation acknowledges Mr. Isham's unique and valuable contributions to Mr. Woolard and Mr. Pelayo, while also taking into account Isham's specific life history and characteristics.

Dated this 16th day of November 2021.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

/s/ *Mike Lang for*
MIKE LANG
KARYN S. JOHNSON
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: (206) 553-7970

---

[4] In his letter, Isham makes several references to the importance of his family, a reliance the government does not dispute. It should be noted, however, this same family, including his second wife, Sahar Siddiq, have expressed no interest in helping Isham refrain from a life of crime. To the contrary, Ms. Siddiq, in a text exchange with Mr. Pelayo on August 4, 2018, the day after Isham was arrested, mentioned her fervent hope that cooperating witnesses would die. (Exhibit Three, Attached).

United States' Sentencing Memorandum
*United States v. Isham*, CR18-217 JCC – 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970